UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> SEAN PATRICK STEVENS, ) <br> Defendant. ) <br> ) | C.A. No. 24-cr-0016-MSM-PAS |

ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the defendant Sean Patrick Stevens's Motion to Suppress (ECF No. 29). Mr. Stevens was interviewed by members of the Rhode Island State Police Internet Crimes Against Children Task Force ("ICAC") after they arrived at his home to execute both search and arrest warrants for his alleged possession of child pornography. Mr. Stevens seeks to suppress statements that he made during that interview, arguing that police violated his Fifth Amendment rights by subjecting him to an impermissible two-step interrogation in contravention of *Missouri v. Seibert*, 542 U.S. 600 (2004). For the following reasons, the Court DENIES Mr. Stevens' Motion.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To comport with the Fifth Amendment, statements obtained by police must be made following a knowing and voluntary waiver of the right to self-incrimination. *See Miranda v. United States*,

384 U.S. 436, 444 (1966). To make a knowing waiver of that right, the defendant must be given the, now well known, *Miranda* warnings by police. *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010).

Generally, "in the absence of coercion or improper tactics by law enforcement in obtaining an initial statement, a subsequent statement is admissible if the defendant was advised of his *Miranda* rights and knowingly and voluntarily waived those rights." *United States v. Faust*, 853 F.3d 39, 47 (1st Cir. 2017) (citing *Oregon v. Elstad*, 470 U.S. 298, 318 (1985). "However, suppression may be proper when police deliberately employ a two-step interrogation tactic designed to circumvent warnings." *Id.* at 48. Deliberate two-step interrogation tactics—where police interrogate a defendant *before* giving the *Miranda* warnings, obtain a confession, *then* administer the *Miranda* warnings in the hopes of having the suspect repeat the confession—were condemned by the Supreme Court in *Missouri v. Seibert* because, *inter alia*, they interfere with a suspect's ability to understand that their pre-*Miranda* statements are inadmissible at court. *See Seibert*, 542 U.S. at 612.

Here, according to Mr. Stevens, after being "roused from his sleep and seized from his bed at gunpoint," ICAC detectives took him to the kitchen of his residence and questioned him without the benefit of *Miranda* warnings. (ECF Nos. 29-1 at 2; 29-2 ¶¶ 2–10.) After supposedly making inculpatory statements during that questioning, Mr. Stevens was then taken into his apartment's small bathroom, where detectives directed him to sit on the closed toilet while they stood over him. (ECF Nos. 2-1 at 2; 29-2 ¶¶ 11–14.) Detectives then advised Mr. Stevens of his *Miranda*

rights for the first time, had him read and sign a waiver of those rights without his reading glasses, and then continued interrogating him without permitting him to relieve himself or to speak with his wife. (ECF Nos. 29-1 at 2; 29-2 ¶¶ 16–22.) This portion of the detectives' questioning is recorded. *See* ECF No. 29-3.

The United States asserts that no interview in the kitchen occurred, and disputes Mr. Stevens's characterization of the circumstances in which the bathroom interrogation took place. (ECF No. 32 at 6.) According to the United States, at no point was Mr. Stevens held at gunpoint. *Id.* at 2. Mr. Stevens was kept in the kitchen during a "standard safety sweep" of the residence before being moved to the bathroom, where the subsequent interview lasted only about thirty-eight minutes. *Id.* The United States contends that Mr. Stevens had no trouble reading a form advising him of his *Miranda* rights, acknowledged his understanding of those rights, and then willingly signed the waiver. *Id.* at 3–4. The United States also notes Mr. Stevens only asked to speak with his wife within the final minutes of the interview. *Id.* at 4; *see* ECF No. 29-4 at 52–53.)

Mr. Stevens's contention that a pre-*Miranda* interview took place is based entirely on two exchanges from his recorded interrogation that indicate some amount of questioning may have occurred previously. (ECF No. 29-1 at 5–6.) First, when a detective asked how long Mr. Stevens had been living in his apartment, he responded: "I've been with my wife. We've been here since—*like she said*—I think two years or so." (ECF No. 29-4 at 12) (emphasis added). Second, when a detective asked whether

3

Mr. Stevens currently had a job, he replied: "*Like I said*, Level 99 I was hired for." (ECF No. 29-4) (emphasis added).

The Court finds that these statements do not support Mr. Stevens's assertion that the ICAC detectives conducted an impermissible two-step interrogation. The first statement clearly identifies the declarant as Mr. Stevens's wife, not Mr. Stevens. The second statement, on the other hand, at most suggests that the ICAC detectives may have previously asked Mr. Stevens where he worked. Such questioning hardly suggests that police used a two-step interrogation technique "in a calculated way to undermine the *Miranda* warning." *United States v. Verdugo*, 617 F.3d 565, 575 (1st Cir. 2010) (quoting *Missouri v. Seibert*, 542 U.S. 600, 622 (2004) (Kennedy, J., concurring)). A review of the recorded interrogation as a whole—which begins with extended questioning regarding Mr. Stevens's background before gradually approaching topics directly related to his alleged crimes—strongly indicates no prior substantive interrogation took place. *See* ECF No. 29-4; *see also United States v. Sanchez*, 817 F.3d 38, 44 (1st Cir. 2016) ("Interrogation for *Miranda* purposes includes 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

Because police did not conduct a two-step interrogation of Mr. Stevens, *Missouri v. Seibert* does not warrant suppression of Mr. Stevens's recorded

statements.[1]  Further, based on the preponderance of the evidence, the Court finds that Mr. Stevens voluntarily and knowingly waived his *Miranda* rights by reading and signing the *Miranda* waiver form provided to him by the detectives.  *See id.* at 6–8.  Suppression of his statements is therefore unwarranted.

Consequently, for the foregoing reasons, the Court DENIES Mr. Stevens's Motion to Suppress (ECF No. 29).

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

November 25, 2025

---

[1] In analyzing cases involving challenged two-step interrogations, the First Circuit has declined to definitively rule on whether to follow the totality-of-the-circumstances test proposed by *Seibert*'s four-justice plurality or the narrower "deliberate use" test proposed by Justice Kennedy's concurrence.  *See United States v. Faust*, 853 F.3d 39, 48 (1st. Cir. 2017).  The Court need not apply either approach here because it finds that no pre-*Miranda* interrogation took place, and *Missouri v. Seibert* is therefore not implicated.